UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James McMurray, | Civil No. 21-414 (DWF/DTS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| AT&T Mobility Services, LLC, | |
| Defendant. | |

Michael B. Healey, Esq., Wagoner, Falconer & Judd, Ltd., counsel for Plaintiff.

Sara Brady Tomezsko, Esq., and Kenneth Gage, Esq., Paul Hastings LLC; Lauren Clements, Esq., and Shirley O. Lerner, Esq., Littler Mendelson, PC, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant AT&T Mobility Services, LLC's ("AT&T") Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 17 ("Motion").) Plaintiff James McMurray ("McMurray") opposes the motion. (Doc. No. 26 ("Pl. Opp.").) For the reasons set forth below, the Court grants AT&T's Motion.

## BACKGROUND

In January 2021, McMurray sued AT&T in the Fourth Judicial District Court, Hennepin County, State of Minnesota, alleging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et sec.*, and common law Intrusion on Seclusion

under Minnesota law.  (Doc. No. 1 ("Compl.") ¶¶ 35-54.)  AT&T timely removed the matter to this Court in February 2021.  (Doc. No. 1-2.)

McMurray began working for AT&T in 2005.  (Compl. ¶ 10.)  On November 30, 2011, AT&T sent an email to McMurray at his work email address with the subject line, "Action Required:  Arbitration Agreement."  (Doc. No. 20, Ex. A ("Giordano Decl.") ¶ 11, Ex. 1 ("Email").)  The email stated:

> AT&T has a created an alternative process for resolving disputes between the company and employees.  Under this process employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes.  Arbitration is more informal than a lawsuit in court, and may be faster.
>
> The decision on whether or not to participate is yours to make.  To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.**  It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you.  To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, Feb. 6, 2012 to opt out—that is, to decline to participate in the arbitration process—using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement.  This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> **Instructions for "Opting Out" of the Agreement:**
>
> **To opt out of the Agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.**
>
> Remember, the decision is yours.  There are no adverse consequences for anyone opting out of the Management Arbitration Agreement.  If, contrary

> to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).
>
> If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").
>
> **Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration**.

(*Id.* (emphasis in original).) The Email included a link to the referenced Management Arbitration Agreement ("Arbitration Agreement"). (*Id.*; *see also* Giordano Decl. ¶ 13, Ex. 2 ("Arbitration Agreement").)

On December 17, 2011, AT&T sent McMurray a second email at his work email address, identical in substance to the first Email, and including the same subject line: "Action required: Arbitration Agreement." (Giordano Decl. ¶¶ 12, 18, Ex. 5 ("Email Record").)

On January 9, 2012, McMurray used his unique company username and password to access the full text of the Arbitration Agreement on AT&T's corporate intranet.[1] (*Id.* ¶¶ 15, 19, Ex. 6 ("Access Record").) On the same date, McMurray clicked on a button labeled "Review Complete" which was designed to indicate that the recipient had received and reviewed the Arbitration Agreement. (*Id.* ¶ 20, Ex. 7 ("Review Record").)

By its terms, the Arbitration Agreement "is governed by the Federal Arbitration Act" and "applies to any claim that [a party to the Agreement] may have against . . . any

---

[1] AT&T's computer system retains a record of each employee accessing the Arbitration Agreement on its corporate intranet in the ordinary course of business. (Giordano Decl. ¶ 19.)

3

AT&T Company." (Arbitration Agreement at 2.)  The Arbitration Agreement also explains its purpose and effect:

> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. Arbitration is more informal than a lawsuit in court, and may be faster. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.  Under this Agreement, Arbitrators can award the same damages and relief that a court can award.

(*Id.*)  The Arbitration Agreement also expressly states that it applies to "claims includ[ing] without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, . . . termination, . . .discrimination . . . and claims arising under the . . . Civil Rights Act of 1964 . . . and all other state and local statutory and common law claims."[2]  (*Id*. at 2-3.)

McMurray did not opt out of the Arbitration Agreement by the February 6, 2012 deadline[3] (Giordano Decl. ¶ 26) and continued to work for AT&T until early 2020 (*see* Compl. ¶¶ 25, 30).)  AT&T now seeks to compel arbitration pursuant to the terms of the Arbitration Agreement and to stay this action during the pendency of the arbitration.  (*See generally*, Motion.)

---

[2]  The Arbitration Agreement also states that AT&T will pay the costs and fees of the arbitrator.  (Arbitration Agreement at 4.)

[3]  Thousands of other AT&T employees did opt out of the Arbitration Agreement. (Giordano Decl. ¶ 25.)

4

## DISCUSSION

AT&T brings this Motion pursuant to the Federal Arbitration Act ("FAA"). The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[W]here a valid arbitration agreement exists" a federal court "must liberally construe it, resolving any doubts in favor of arbitration." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (internal quotation marks and citation omitted).

"A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists, and if it does (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.,* 377 F.3d 868, 871 (8th Cir. 2004) (citation omitted). "In determining whether the parties have agreed to arbitrate, state law contract principles apply, in accordance with the general policies governing arbitration agreements." *Yufan Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 914 (D. Minn. 2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1985)).

The FAA also directs the court to stay all proceedings pending completion of arbitration. 9 U.S.C. § 3 ("[T]he court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .").

**A.     Validity of the Arbitration Agreement**

Under Minnesota law, an enforceable contract requires: (1) the communication of a specific and definite offer; (2) acceptance of that offer; and (3) consideration. *Pine*

*River State Bank v. Mettille*, 333 N.W.2d 622, 626-27 (Minn. 1983). Minnesota courts evaluate the objective conduct of the parties when determining whether a valid and enforceable contract exists. *Zean v. Comcast Broadband Sec., LLC*, 322 F. Supp. 3d 913, 917 (D. Minn. 2018).

McMurray argues that the Arbitration Agreement is invalid because: (1) AT&T did not communicate a definite offer to arbitrate claims; (2) he did not accept the Arbitration Agreement because he did not sign it; (3) there was no mutual assent because he did not understand what "arbitration" meant; (4) the Arbitration Agreement lacked consideration; (5) the Arbitration Agreement violates Minn. Stat. § 572B.31[4]; and (6) the Arbitration Agreement is unconscionable. (Pl. Opp. at 5-17.)

AT&T contends that the Email constituted a valid offer that McMurray accepted when he did not opt out and continued to work for AT&T, and that consideration was established through the parties' mutual promises to forgo litigating future claims in a court of law. (Doc. No. 19 ("Def. Memo.") at 9-16; *see also* Doc. No. 28 ("Reply") at 3-9, 11-12.) AT&T further argues that it provided McMurray with ample opportunity to understand what arbitration was, and that whether or not he understood does not

---

[4]    Under, Minn. Stat. § 572B.31, Minnesota arbitration law regarding electronic signatures and records conforms with section 7001 (formerly section 102) of the Electronic Signatures in Global and National Commerce Act ("ESGNCA"). Minn. Stat. § 572B.31. *See also* 15 U.S.C. § 7001. The ESGNCA requires that when a statute, regulation, or other rule of law requires that information be provided in writing, a consumer must grant affirmative consent to use of an electronic record and must be provided with an option to receive a hard copy of the record prior to granting affirmative consent. *See id.* at § 7001(c)(1)(a)(b).

6

invalidate the Arbitration Agreement; and that the Arbitration Agreement is not unconscionable because McMurray had a clear choice to opt out. (Reply at 9-13.)

The Court first observes that the Email, and subsequent reminder email, which included a link to the Arbitration Agreement, specifically laid out the material provisions of the Arbitration Agreement including the mutual promises to arbitrate, the nature of the claims subject to arbitration, the exclusive nature of the arbitration remedy, and a method and deadline for acceptance. (*See* Email; *See also*, Arbitration Agreement at 2.) Minnesota courts have found similar communications sufficient to constitute a definite offer. *See, e.g.*, *Lang v. Burlington N. R. Co.*, 835 F. Supp. 1104, 1106 (D. Minn. 1993) (finding arbitration policy with similar terms sufficiently definite in form); *Hall v. City of Plainview*, 954 N.W.2d 254, 261–62 (Minn. 2021) (finding offer sufficiently definite where details provided included specific information and procedures by which employees could comprehend and take advantage of employer policy). While McMurray suggests that the Email and attached Arbitration Agreement was a general statement of company policy, the Court finds that it clearly indicated AT&T's intent to enter into an agreement with McMurray.

The record also reflects that McMurray received the Email and reminder email, accessed the full text of the Arbitration Agreement, and clicked a button labeled "Review Complete," designed to indicate that he had reviewed the terms of the Arbitration Agreement. (*See* Email Record; Access Record; Review Record.) Thus, the Court concludes that AT&T's intent to enter into an agreement with McMurray was

appropriately communicated to him and constitutes an offer under Minnesota contract law.

The Court next observes that whether or not McMurray signed the Arbitration Agreement, his conduct demonstrated acceptance when he did not opt out of the Arbitration Agreement and continued to work for AT&T.[5]  *Zean*, 322 F. Supp. 3d at 917; *see also*, *Heath v. Travelers Cos., Inc.*, Civ. No. 08-6055, 2009 WL 1921661, at *4 (D. Minn. 2009) ("A person's assent to an agreement is determined by his or her objective conduct. . . Even if a person does not personally sign an agreement, he or she may be bound to it . . . ."  (citations omitted)).

---

[5]  A signature is not required to form a contract in Minnesota.  *See, e.g.*, *Gorham v. Benson Optical*, 539 N.W.2d 798, 800 (Minn. Ct. App. 1995) (plaintiff accepted employment contract by reporting to work, despite failing to sign and return job acceptance letter); *Rust Consulting, Inc. v. Scheinder Wallace Cottrell Konecky Wotkyns, LLP*, Civ. No. 17-4981(DSD/TNL), 2019 WL 3456891, at 3-4* (D. Minn. July 31, 2019) (a signature requirement may be waived through objective conduct of acceptance).  The FAA also does not require that arbitration agreements be signed to be enforceable.  *Filson v. Radio Advert. Mktg. Plan, LLC*, 553 F. Supp. 2d 1074, 1086 (D. Minn. 2008) (compelling arbitration on behalf of individual who did not sign arbitration agreement).

To the extent McMurray relies on past dealings to argue that a signature was required to validate the Arbitration Agreement, the Court notes that the law does not require that an employer contract with employees in a particular way, or even the same way over time, so long as all elements of a valid contract are present.  As described below, the Court finds that all elements of a valid contract are present here.

Because the Arbitration Agreement does not require a signature or other electronic evidence of assent, the Court does not address McMurray's argument that the Arbitration Agreement violates Minn. Stat. § 572B.31.

Where an offer specifies certain conduct as a form of acceptance, the offeree accepts by engaging in conduct consistent with the terms of the offer.[6] *Johnson v. Hubbard Broad, Inc.*, 940 F. Supp. 1447, 1454 (D. Minn. 1996). Here, AT&T presented McMurray with a clear choice of whether or not to accept the Arbitration Agreement and provided him specific instructions on how to opt out. Thousands of other AT&T employees opted out of the Arbitration Agreement. When McMurray did not opt out, his conduct plainly indicated acceptance of the Arbitration Agreement. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713-14 (7th Cir. 2019) (finding that employee's silence and inaction conveyed acceptance of an employer's modified arbitration policy when employee did not respond to email or opt out of the policy).

McMurray also continued to work for AT&T after he was advised of the Arbitration Agreement and did not opt out. When an employee is made aware of a potential change in the employment relationship, "[t]he employee's retention of employment constitutes acceptance of the offer." *Pine River*, 333 N.W.2d at 627. In short, the Court finds that McMurray's conduct conveyed acceptance of AT&T's offer to arbitrate future claims.

The Court also observes that insofar as McMurray argues that the Arbitration Agreement is invalid because he did not understand what arbitration meant, a failure to read or understand a contract before accepting it does not bar enforcement. *Johnson*, 940

---

[6] While McMurray claims that silence does not constitute acceptance, in this case, the offer made clear that inaction would be construed as acceptance.

F. Supp. at 1456 ("Failing to read or understand the language of a contract serves as no defense under the law.") (citation omitted).  Moreover, the record reflects that both the Email and Arbitration Agreement explained the concept of arbitration in plain, understandable terms, and advised that any further questions could be directed to the AT&T Employee Service Hotline before the deadline to opt out.  (*See* Email; Arbitration Agreement at 2.)  Thus, even if failure to understand a contract was a defense to enforcement, McMurray had over 60 days to inquire about the meaning of arbitration and had the option to opt out if he did not want to be bound by something he did not understand.

      The Court next observes that under Minnesota law, an exchange of mutual promise is adequate consideration to support a contract.  *Koehler Hinrichs Mercantile Co. v. IL Glass Co.*, 173 N.W. 703, 704 (Minn. 1919).  Here, the Email and Arbitration Agreement clearly stated that both McMurray and AT&T would be bound by promises to arbitrate claims against one another.  (*See* Email ("Under this process employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes"); Arbitration Agreement at 2 ("Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation.").)  Because both parties promised something of value—each foregoing their right to pursue future claims against one another in a court of law—the Court finds the necessary consideration to support a binding contract.

Finally, the Court observes that while McMurray may not like the Arbitration Agreement, he has failed to show that it is unconscionable. In Minnesota, a party asserting an unconscionability defense "must establish that he or she had no meaningful choice but to accept the contract terms as offered and that the terms of the contract were unreasonably favorable the other party." *BAM Navigation, LLC v. Wells Fargo & Co.*, No. 20-cv-1345 (NEB/ECW), 2021 WL 533692, at *4 (D. Minn. Feb. 12, 2021) (internal quotation marks and citation omitted).

McMurray contends that the Arbitration Agreement is unconscionable because he "had no meaningful choice but to deal with the arbitration policy he was provided" when "it lacked a link for [him] to electronically register a decision to accept, did not contain any space for written acknowledgment or signature, and was given to [him] almost seven (7) years into his employment with [AT&T]." (Pl. Opp. at 16.)

As discussed above, the law does not require a signature to enact a valid contract. More importantly, the Email and Arbitration Agreement both advised that McMurray could reject the Arbitration Agreement without repercussion by choosing to opt out. (Email ("The decision on whether or not to participate is yours to make . . . There are no adverse consequences for anyone opting out of the Management Arbitration Agreement."); Arbitration Agreement at 2 ("The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision.").) Because McMurray clearly had the opportunity to opt out of the Arbitration Agreement, the Court finds that the contract is

11

not unconscionable.⁷ *See Sienkaniec v. Uber Techs., Inc.*, No. 17-CV-4489 (PJS/FLN), 2017 WL 7791193, at *1 (D. Minn. Dec. 18, 2017) (noting that it "is not surprising" that courts regularly decline to find arbitration agreements unconscionable where employees can easily choose to opt out).

In short, the Court finds a valid offer, acceptance with the requisite mutual assent, and consideration to enforce the Arbitration Agreement under Minnesota law, and further finds that the Arbitration Agreement is not unconscionable.

**B.     Scope of the Arbitration Agreement**

Having determined that the Arbitration Agreement is valid, the Court next addresses whether McMurray's claims fall within its scope. "In resolving this issue, the first question is whether the arbitration clause is broad or narrow." *Parm*, 898 F.3d at 874 (internal quotation marks and citation omitted). "If the clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* (internal quotation marks and citation omitted). "Arbitration agreements covering claims 'arising out of' or 'relating to' an agreement . . . constitute[] the broadest language the parties could reasonably use . . . ." *Id.* (internal

---

⁷       To the extent McMurray argues that the Arbitration Agreement is biased because AT&T would pay the arbitrator's fees, the U.S. Supreme Court has rejected this reasoning. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) ("[W]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.") (internal quotation marks and citation omitted).

quotation marks and citation omitted).  Doubts are resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm. Workers of AM.*, 475 U.S. 643, 650 (1986) (citation omitted).

Here, the Arbitration Agreement clearly states that it applies to claims between McMurray and AT&T "includ[ing] without limitation those arising out of or related to [his] employment or termination of employment with [AT&T] and any other disputes regarding the employment relationship, . . . termination, . . .discrimination . . . and claims arising under the . . . Civil Rights Act of 1964 . . . and all other state and local statutory and common law claims."  (Arbitration Agreement at 2-3.)

McMurray argues that because the Arbitration Agreement does not specifically list privacy violations as an arbitrable issue, his claims fall outside its scope.  (Pl. Opp. at 14-15.)  AT&T counters that whether or not the privacy violations are specifically listed, McMurray's claims fall squarely within the scope of the Arbitration Agreement because they arise out of or are related to his employment with AT&T.  (Def. Memo. at 16-18; Reply at 14-15.)

The Court notes that McMurray's allegation related to AT&T's violation of his policy resulted in the termination of his employment.  (*See* Compl. ¶¶ 24-34, 45-54.) Given the broad scope of the covered disputes, the Court cannot conclude with positive assurance that the Arbitration Agreement is not susceptible of an interpretation that covers McMurray's claims.  *AT&T Techs.*, 475 U.S.at 650 (1986).  While the Arbitration Agreement does not explicitly state that it covers claims related to privacy, the Court

13

finds that such claims are clearly encompassed by the Arbitration Agreement's broad assertion that it pertains to all claims "without limitation" arising out of or related to McMurray's employment or termination, and "any other disputes regarding the employment relationship." Thus, the Court finds that McMurray's claims are subject to the Arbitration Agreement.

Because the Court finds a valid Arbitration Agreement and that McMurray's claims are within its scope, the Court grants AT&T's motion to compel. The Court also stays the proceedings in this matter until McMurray's claims have been arbitrated. 9 U.S.C. § 3

## CONCLUSION

For the reasons set forth above, the Court finds that the Arbitration Agreement is a valid and enforceable contract under Minnesota law and that it encompasses McMurray's claims. Thus, the Court grants AT&T's motion to compel arbitration and stay the proceedings during its pendency.[8]

## ORDER

Based on the files, record, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendant AT&T Mobility Services, LLC's

---

[8] If the parties so desire, the Court is willing to facilitate mediation with a magistrate judge prior to arbitration.

Motion to Compel Arbitration and Stay Proceedings (Doc. No. [17]) is **GRANTED** as follows:

1. The parties are bound by an arbitration agreement.

2. This matter is stayed pending arbitration.

Dated:  August 2, 2021                             s/Donovan W. Frank
                                                   DONOVAN W. FRANK
                                                   United States District Judge